UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **YURI LILLARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:22-cv-3117-GCS** |
| | ) | |
| **JILIAN CRANE** | ) | |
| **and** | ) | |
| **MOHAMMED SIDDIQUI,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

## INTRODUCTION AND BACKGROUND

Currently before the Court is Defendants Jilian Crane's and Mohammed Siddiqui's motion for summary judgment. (Doc. 75, 76, 85, 86). Plaintiff, by and through appointed counsel, opposes the motion. (Doc. 80, 81, 82, 90). Based on the reasons delineated below, the Court **GRANTS** the motion for summary judgment.

Plaintiff Yuri Lillard, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Illinois River Center ("Illinois River"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 that occurred while he was housed at Menard Correctional Center ("Menard"). Plaintiff's original Complaint was dismissed for failure to state a claim, and Lillard was granted leave to file an Amended Complaint. In the Amended Complaint, Plaintiff alleges Defendants misdiagnosed his hernia pain in violation of the Eighth Amendment and Illinois state law. (Doc. 12).

In his Amended Complaint, Plaintiff alleges that in November or December 2020, he informed Defendant Crane of stomach pain, and Crane referred him for an x-ray. (Doc. 12, p. 2). Defendant Siddiqui deemed the x-rays to be normal and provided Plaintiff with Ibuprofen for his pain. *Id*. at p. 2-3. Plaintiff complained again to Defendant Crane who determined there was something in his groin; as such, Defendant Crane scheduled a sonogram. Plaintiff saw an outside doctor on May 31, 2022, and he was scheduled for hernia surgery on August 2, 2022. *Id*. at p. 3. His surgery was rescheduled due to a computer error, and the surgery was set for September 22, 2022. During the time period that he waited for surgery, Plaintiff alleged his pain was a ten out of ten. Defendant Crane later explained the original x-ray would not have shown the issue with his hernia. *Id*. Plaintiff alleges Defendants Crane and Siddiqui misdiagnosed his condition and failed to exercise ordinary knowledge and skill. *Id*. at p. 3-4. He further alleges he was subjected to a seven-month delay in diagnosis and treatment due to the failure to originally schedule a sonogram rather than an x-ray. *Id*. at p. 4. Plaintiff further alleges Defendants failed to diagnose the condition because they refused to order any test other than an x-ray. *Id*.

On June 16, 2023, the Court, pursuant to 28 U.S.C. § 1915A, conducted a review of the Amended Complaint and allowed Plaintiff to proceed on an Eighth Amendment deliberate indifference claim against Defendants Crane and Siddiqui for delaying the diagnosis and treatment of his stomach pain, (Count 1), and an Illinois state law medical malpractice claim against the same individuals for delaying the diagnosis and treatment of his stomach pain, (Count 2). (Doc. 14).

Defendants Crane and Siddiqui maintain they are entitled to summary judgment as Plaintiff cannot set forth any evidence they were deliberately indifferent to Plaintiff's serious medical need, nor did Plaintiff suffer any injury caused by them. Further, they argue Plaintiff failed to comply with 735 ILL. COMP. STAT. § 5/2-622 and this failure is fatal to the medical malpractice claim. Defendants additionally assert that Plaintiff cannot establish medical malpractice. Plaintiff argues that the evidence shows Defendant Siddiqui was deliberately indifferent to his serious medical needs. Plaintiff also argues he suffered unnecessary pain caused by Defendant Siddiqui's failure to meaningfully evaluate, diagnose, or follow-up on Plaintiff's serious medical complaint.[1] As to the medical malpractice claim, Plaintiff seeks leave to obtain the affidavit because he has "limited resources," and argues he has presented competent medical evidence on the standard of care and breach. Based on the reasons delineated below, the Court grants the motion for summary judgment.

## UNDISPUTED FACTS[2]

The following facts are taken from the record and presented in the light most favorable to Plaintiff, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

---

1 Plaintiff's response in opposition to the motion for summary judgment is silent as to his claims against Defendant Crane. Thus, the Court finds the lack of response as an abandonment of his claims against Defendant Crane and that Plaintiff has failed to establish his deliberate indifference claim and Illinois state medical negligence claim against this defendant. Thus, the Court **GRANTS** summary judgment in favor of Defendant Crane and against Plaintiff on these two claims.

2 These are the facts agreed to by the parties and/or are supported by the record.

At all times relevant, Plaintiff was housed at Menard. Defendant Siddiqui was the Medical Director at Menard from June 12, 2017, to August 13, 2021. He was in charge of providing health care to the inmates. Defendant Crane was employed as a nurse practitioner at Menard from April 19, 2021, to October 2024.

On December 2, 2020, Plaintiff saw Menard medical staff regarding complaints of abdominal pain that had been persisting for about a month. He told medical staff his abdominal pain was unbearable after standing too long. The medical note from this visit states the appearance of his abdomen was not scaphoid, obese, distended, or bruised.[3]

Defendant Siddiqui saw Plaintiff on December 9, 2020, for complaints of lower abdominal pain that had been present for two months. Plaintiff reported no urinary or bowel symptoms. Plaintiff's abdomen was soft, flat and non-tender with no masses present. Plaintiff's bowel sounds were positive. Defendant Siddiqui noted the presence of a scar from a previous umbilical hernia repair, and he diagnosed Plaintiff with non-specific abdominal pain. Defendant Siddiqui ordered a kidney, ureter, and bladder x-ray, in addition to a urinalysis, complete blood count test, follow-up panel, and indirect bilirubin test.[4] He also ordered a follow-up when the test results were received. Defendant Siddiqui ordered these tests to determine Plaintiff's source of pain.

---

[3] A scaphoid abdomen is when the anterior abdominal wall is sunken and presents a concave rather than a convex contour.

[4] A kidney, ureter, and bladder ("KUB") x-ray is a plain film radiograph that provides images of the kidneys, ureter, and bladder. It can also be used to assess the abdominal area for causes of abdominal pain, or to assess the organs and structures of the urinary or gastrointestinal system. A urinalysis ("UA") is a test of the urine. It is used to detect a wide range of disorders including urinary tract infections, kidney disease,

An ultrasound can detect an inguinal hernia.[5]

Plaintiff had the KUB on January 29, 2021. Defendant Siddiqui reviewed the x-ray on February 8, 2021. The x-ray revealed moderate constipation, a non-obstructive bowel gas pattern, and phleboliths in the pelvis.[6] Defendant Siddiqui determined the KUB to be normal. Defendant Siddiqui met with Plaintiff to discuss the results and told him the x-ray was normal. Plaintiff responded he was still in pain and questioned how his tests could be normal.

Plaintiff requested many times to be seen by the medical staff between January and December 2021.

Plaintiff saw a nurse on February 11, 2022, for pain and discomfort in his left groin. The nurse noted no signs or symptoms of severe pain but did note the presence of a baseball sized nodule. The nurse ordered Plaintiff to be referred to the doctor if presented with acute signs of severe discomfort.

---

kidney stones, or other kidney related issues that can manifest abdominal pain. A complete blood count ("CBC") is a blood test that measures amounts and sizes of your red blood cells, hemoglobin, white blood cells, and platelets. It can be used to detect the presence of infection, inflammation, or anemia, all of which can cause recurrent abdominal pain. A basic metabolic panel ("BMP") is a blood test that can be used to evaluate the source of abdominal pain by checking kidney function, electrolyte balance, and blood sugar. A bilirubin test measures the bilirubin levels in the blood and is used to check liver health.

5 The inguinal region is the groin area.

6 A phlebolith is a small calcification that forms within a vein, usually in the lower pelvis.

On March 2, 2022, Defendant Crane saw Plaintiff. Plaintiff reported he had been in pain for more than a year. Upon examination, Defendant Crane found his abdomen to be soft and only tender to the lower left quadrant, where an easily reducible inguinal hernia was present.[7] Plaintiff denied issues with his bowels. Defendant Crane diagnosed Plaintiff with a left inguinal hernia. Defendant Crane referred Plaintiff for an ultrasound of the left pelvis and groin, a consultation with a surgeon, and a one-month prescription of Tylenol.

On March 4, 2022, Defendant Crane submitted referrals for Plaintiff to undergo the ultrasound and to be seen for a surgical consult.

In March 2022, Plaintiff had a sonogram.

On April 24, 2022, Plaintiff asked a nurse for his medical hold to be discharged so he could be transferred.

Plaintiff saw a nurse on May 29, 2022, for left groin inguinal hernia pain. The nurse noted Plaintiff was in no acute distress, and his gait was steady. An obvious lump was noted in the left groin, but his bowel sounds were positive. A referral was submitted for Plaintiff to be seen by a doctor. Ibuprofen was also provided, and he was given a two-day medical lay-in.

Plaintiff saw outside physician Dr. Adrian Martin on May 31, 2022, for his inguinal hernia. Upon physical examination, Dr. Martin found a left inguinal hernia by putting

---

[7] An inguinal hernia is a bulging of the contents of the abdomen through a weak area in the lower abdomen. A reducible hernia is a type of hernia where the herniated tissue can be manually pushed back through the abdominal wall.

his finger along the inguinal canal and asking Plaintiff to cough. Dr. Martin made an ambulatory referral for a laparoscopic surgical repair of Plaintiff's hernia. Dr. Martin is a general surgeon with decades of experience who has performed over one thousand inguinal hernia repairs.

Nurse Practitioner Alisa Dearmond submitted a referral for Plaintiff to undergo left inguinal hernia surgery on June 4, 2022. A little over seven weeks later, Plaintiff saw a nurse for complaints of left inguinal hernia pain. The nurse found his hernia was not protruding and was reducible. The nurse prescribed three days of Acetaminophen and was told to return if his symptoms became worse. Two days later, on July 29, 2022, Plaintiff spoke to another nurse regarding his surgery. The nurse submitted a request to check the status.

Plaintiff underwent the left inguinal hernia repair on September 22, 2022. That same day, Defendant Crane issued Plaintiff a one-month lower bunk and medical lay-in permits.

Plaintiff followed-up with Dr. Martin on October 13, 2022. Plaintiff denied post-operative complications. He also had a normal appetite and normal bowels. Dr. Martin found Plaintiff to be doing well post-operatively and told him to follow-up as needed.

Defendant Siddiqui testified he would not normally look for a hernia unless a patient told him he had a hernia. He also testified he would typically diagnose a hernia by looking at it and if there was no visible hernia, "then there is no hernia." He further testified that providers must narrow down the potential causes of abdominal pain to determine the cause and then address that cause.

Specifically, as to Plaintiff's condition, Defendant Siddiqui, testified as follows: "[t]his is the reason it's call – I diagnosed him as non-specific abdominal pain, because his symptoms were not telling me that it is a kidney pain. His symptoms were not telling me it is a gallbladder pain. His symptoms were not telling me what kind of pain it is. It was just vague pain and there was – no – nothing specific, so I called it non-specific abdominal pain." (Doc. 80-4, p. 9-10). He also stated there was no treatment for "non-specific abdominal pain," but rather "[y]ou find out what is causing it."

Dr. Martin testified as to the hernia diagnosis: "[i]n my general practice I would ask the patient to expose his genital area and his groin area, and I would do a visual examination, and then I will do a superficial palpation. And then I would do an examination of the inguinal canal, which means I would basically put my finger alongside his inguinal canal and ask him to cough." (Doc. 81-5, p. 11). He further testified about the visual aspect of hernias: "[n]ot always on visual inspection, but more of the times it is palpable on physical examination." *Id*. at p. 8-9. And when asked what diagnostic tool he would use to detect a hernia, Dr. Martin testified: "I think that the most rely, reliable would be a CT scan. Some perform ultrasounds, which is very operator dependent, and not necessarily always very, very reliable." *Id*. at p. 12-13. Lastly, Dr. Martin testified that if the cause of the patient's pain cannot be determined through initial physical examination, the medical standard of care requires further diagnostic evaluation to determine the cause including the use of diagnostic imaging.

## LEGAL STANDARDS

Summary judgment is proper when the pleadings and affidavits "show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 567 (7th Cir. 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Fletcher v. Doig,* 145 F.4th 756, 764 (7th Cir. 2025) (citing *Anderson*, 477 U.S. at 255). *See also Bishop v. Air Line Pilots Association International,* 5 F.4th 684, 693 (7th Cir. 2021) (stating that "we are not required to draw every conceivable inference from the record . . . but 'only those inferences that are reasonable.'") (internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in factfinding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Knight v. Wiseman,* 590 F.3d 458, 463 (7th Cir. 2009); *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is

merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Smith v. City of Janesville,* 40 F.4th 816, 821 (7th Cir. 2022); *Doxtator v. O'Brien,* 39 F.4th 852, 860 (7th Cir. 2022). In other words, "inferences relying on mere speculation or conjecture will not suffice." *DiPerna v. Chicago School of Professional Psychology,* 893 F.3d 1001, 1006 (7th Cir. 2018) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *Burton v. Kohn Law Firm, S.C.,* 934 F.3d 572, 579 (7th Cir. 2019) (internal citation omitted).

## DISCUSSION

### Count 1: Eighth Amendment claim against Defendant Siddiqui

The Eighth Amendment prohibits cruel and unusual punishments, and the deliberate indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Donald v. Wexford Health Sources, Inc.,* 982 F.3d 451, 457-458 (7th Cir. 2020) (citations omitted). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"— not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A prisoner's dissatisfaction with a medical professional's prescribed course of treatment does not give rise to a successful deliberate indifference claim unless the treatment is so "blatantly

inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (citation omitted).

To prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally deficient medical care must satisfy a two-part test. *See Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (citations omitted). The first consideration is whether the prisoner has an "objectively serious medical condition." *Johnson*, 5 F.4th at 824. *Accord Whitaker v. Dempsey*, 144 F.4th 908, 916 (7th Cir. 2025) (citations omitted). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Lockett v. Bonson*, 937 F.3d 1016, 1022-23 (7th Cir. 2019) (citations omitted). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a substantial risk of serious harm") (internal quotation marks omitted).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *See Johnson*, 5 F.4th at 824. The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Haywood v. Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016) (citations omitted). "Something more than negligence or even malpractice is

required" to prove deliberate indifference. *Lockett*, 937 F.3d at 1023. *See also Hammond v. Rector*, 123 F. Supp. 3d 1076, 1086 (S.D. Ill. 2015) (stating that "isolated occurrences of deficient medical treatment are generally insufficient to establish . . . deliberate indifference"). Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Eagan v. Dempsey*, 987 F.3d 667, 688 (7th Cir. 2021) (citations omitted). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (citing *Zaya v. Sood*, 836 F.3d 800, 805-806 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[ ] that [he] did[.]" *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019) (citations omitted). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment where the treatment is known to be ineffective but is chosen anyway. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

Defendant Siddiqui argues he is entitled to summary judgment as Plaintiff cannot establish that he exhibited deliberate indifference to his serious medical needs. Plaintiff counters that Defendant Siddiqui was deliberately indifferent because he delayed the diagnoses and treatment of his stomach pain/hernia. The Court agrees with Defendant Siddiqui.

For the purposes of this motion, the Court finds that Plaintiff's stomach pain was a serious medical condition. However, based on that same record and construing the evidence in the light most favorable to Plaintiff, the Court finds there is no evidence in the record to show that Defendant Siddiqui was deliberately indifferent to Plaintiff's serious medical need regarding the treatment of Plaintiff's stomach pain and the delay in treatment.

Defendant Siddiqui evaluated Plaintiff on December 9, 2020, for ongoing lower abdominal pain and ordered diagnostic tests to determine the cause. Plaintiff reported his lower abdominal pain persisted for about two months, without urinary or bowel symptoms. Plaintiff's abdomen was soft, flat and non-tender, with *no masses detected*. Bowel sounds were present. A prior umbilical hernia repair was noted. Defendant Siddiqui diagnosed non-specific abdominal pain. He ordered the KUB x-ray, a urinalysis, a complete blood count, a follow-up panel, and an indirect bilirubin test. Defendant Siddiqui ordered these tests to identify the source of the abdominal discomfort. Plaintiff underwent the KUB x-ray on January 29, 2021. Defendant Siddiqui reviewed the results on February 8, 2021, which showed moderate constipation, a non-obstructive bowel gas pattern, and phleboliths in the pelvis. Based on his review, Defendant Siddiqui

determined the x-ray was normal. Following the review, Defendant Siddiqui met with Plaintiff to discuss the findings, confirming the x-ray appeared normal. Plaintiff expressed concern noting his persistent pain and questioned how the tests results could appear normal despite his ongoing symptoms.

The Court finds that no reasonable jury could find Defendant Siddiqui's treatment of Plaintiff's condition evidenced deliberate indifference. Defendant Siddiqui examined Plaintiff once for abdominal pain and met with Plaintiff another time to review the test results over a relatively brief two plus month period. There is no evidence in the record to indicate that at that period of time Plaintiff's *abdominal pain* required more aggressive treatment. Defendant Siddiqui did not see Plaintiff again, and he left his employment at Menard in August 2021.

The treatment Plaintiff received from Defendant Siddiqui was not "so blatantly inappropriate as to evidence intentional mistreatment." *Greeno v. Daly*, 414 F.3d 645, 654 (7th Cir. 2005) (citation omitted). The Eighth Amendment does not require that prisoners receive "unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). *See also Forbes*, 112 F.3d at 267 (noting that "[u]nder the Eighth Amendment, [the plaintiff] is not entitled to demand specific care"). Also, the Seventh Circuit recognizes that treatment decisions that necessarily require medical judgment, such as whether one course of treatment is preferable to another, are beyond the Eighth Amendment's purview. *See Snipes*, 95 F.3d at 591. Here, it is apparent Defendant Siddiqui employed his medical judgment and ordered a number of tests to determine the source of Plaintiff's abdominal pain. There is no evidence that Siddiqui refused further care to Plaintiff, blocked

Plaintiff's access to care or was aware that Plaintiff had a hernia in 2020-2021. Therefore, Plaintiff's assertions are insufficient to permit a reasonable jury to find deliberate indifference. *See, e.g.*, *Id*. at 592. (noting that "[a] prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim.").

Even construing the evidence in the light most favorable to Plaintiff, the Court finds no reasonable jury could conclude that Defendant Siddiqui was deliberately indifferent to Plaintiff's serious medical needs regarding his abdominal pain/hernia. Thus, the Court finds that Defendant Siddiqui is entitled to summary judgment.

**Count 2: Medical Negligence Claim**

Defendant Siddiqui contends he is entitled to summary judgment on Plaintiff's medical negligence claim because Plaintiff failed to provide an affidavit or report pursuant to 735 ILL. COMP. STAT. § 5/2-622 stating that there is a "reasonable and meritorious cause" for pursuing his medical negligence claim. Recently, in *Berk v. Choy*, 607 U.S. —, 146 S. Ct. 546 (2026), the United States Supreme Court recently "rejected the reasoning behind the Seventh Circuit's approach to apply the affidavit-of-merit requirement at summary judgment 'to the extent that it is a rule of *substance*,' *Young v. United States*, 942 F.3d 349, 351 (7th Cir. 2019) (emphasis in original), because 'the substantive nature of a state law, or its substantive purpose, *makes no difference*.' So[,]the "affidavit law does not apply in federal court." *Sereda v. Northwestern Memorial Hospital*, No. 1:24-CV-06665, 2026 WL 858754, at *1 (N.D. Ill. March 27, 2026) (citing *Berk*, 146 S. Ct. at 557) (emphasis in original).

That said, to prevail on a medical negligence claim under Illinois law, a plaintiff must establish (1) the proper standard of care against which a medical provider's conduct is measured, (2) a failure to comply with the applicable standard of care, and (3) a resulting injury proximately caused by the provider's lack of skill or care. *See, e.g.*, *Sullivan v. Edward Hospital*, 806 N.E.2d 645, 653 (Ill. 2004) (identifying elements of "a negligence medical malpractice case"). Generally, the plaintiff bears the burden of proving all three elements through the testimony of medical experts. *See Wilbourn v. Cavalenes*, 923 N.E.2d 937, 949 (Ill. App. Ct. 1st Dist. 2010). *See also Bergman v. Kelsey*, 873 N.E.2d 486, 500 (Ill. App. Ct. 1st Dist. 2007) (stating that "[a] plaintiff must generally prove the elements of a medical negligence cause of action through medical expert testimony.") (citing *Knauerhaze v. Nelson*, 836 N.E.2d 640, 652 (Ill. App. Ct. 1st Dist. 2005)).

Here, Plaintiff has not produced the requisite medical expert opinion evidence to establish a medical negligence claim. He presents Dr. Martin, the surgeon who performed his hernia operation, as an expert in this field. Despite this designation, Plaintiff cannot establish the causation element. Defendant Siddiqui saw Plaintiff once on December 9, 2020, because of abdominal pain. As stated *supra*, at this time, Defendant Siddiqui examined Plaintiff and noted he was not suffering any urinary or bowel symptoms. Plaintiff's abdomen was soft, flat and non-tender with *no masses present*. After examining Plaintiff, Defendant Siddiqui ordered numerous tests to determine the cause of Plaintiff's abdominal pain. Thereafter, Defendant Siddiqui met with Plaintiff to inform him that the test results were normal. At this point in time, there is no evidence that Plaintiff had a

hernia when Defendant Siddiqui examined him, ordered the tests, and informed Plaintiff that the test results came back normal.

Moreover, Dr. Martin provides no opinion on causation. Dr. Martin did not connect any injury Plaintiff suffered to Defendant Siddiqui's examination on December 9, 2020, or to his early 2021 meeting with Plaintiff wherein he conveyed the x-ray and test results. In fact, Dr. Martin could not say Plaintiff had had a hernia at that time. (Doc. 76-6, p. 16).[8] Likewise, Dr. Martin provided no opinion that Defendant Siddiqui's conduct caused harm or prolonged Plaintiff's pain.[9] Moreover, when the hernia was detected/diagnosed in 2022, the records show that it was easily reducible. Dr. Martin agreed that a reducible hernia is not an emergent condition and carries no inherent complications. (Doc. 76-6, p. 14). Plaintiff offered no expert testimony that Defendant

---

[8] Dr. Martin was asked the following question as to whether Plaintiff had a hernia in December 2020:

Q. Okay, anything -- based on everything you've reviewed, are you able to say, with a degree of medical certainty, whether Mr. Lillard had an inguinal hernia on December 9th, 2020?

A. No. (Doc. 76-6, p. 16).

[9] When asked if lower abdominal pain for two months is consistent with a hernia, Dr. Martin testified: "I don't think that I can speculate. I don't think that I can speculate. . . . There's many reasons people have lower-abdominal pain." (Doc. 76-6, p. 11). Additionally, when asked if worsening abdominal pain over a year's time is a sign of a serious condition, he testified: "It could. It is very speculative – I don't think I can speculate necessarily on this." *Id.* at p. 13. Also, when asked if constant pain is a characteristic of a hernia, Dr. Martin said: "[t]here's so many reasons why people have abdominal pain. There's so many reasons why people have discomfort. There's so many reasons why people cannot stand. I would not speculate on this." *Id.* at p. 14. He also would not speculate/comment on whether he would recommend imaging for a patient that had soft, flat, and non[-]tender abdomen. *Id.* at p. 17.

Siddiqui's conduct caused any injury, worsened Plaintiff's condition, or delayed treatment. Thus, the Court **GRANTS** summary judgment on the malpractice claim.

## CONCLUSION

Accordingly, the Court **GRANTS** the motion for summary judgment (Doc. 75). The Court **FINDS** in favor of Defendants Mohammed Siddiqui and Jilian Crane and against Plaintiff Yuri Lillard. Further, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and close the case.

**IT IS SO ORDERED**.

**DATED: August 28, 2026.**

Digitally signed by Judge Sison
Date: 2026.08.28 12:44:46 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**